**United States District Court**
**District of Massachusetts**

```
_____
                                )
ARIEL AYANNA,                   )
          Plaintiff,            )
                                )
          v.                    )     Civil Case No.
                                )     10-12155-NMG
DECHERT, LLP,                   )
          Defendant.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Ariel Ayanna ("Ayanna") sues defendant law firm Dechert, LLP ("Dechert") for retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(2) (Count I) and sex discrimination in violation of M.G.L. c. 151B, § 4(1) ("Chapter 151B") (Count II). Currently before the Court is defendant's motion for summary judgment and plaintiff's opposition thereto.

## I.  Factual Background

Ayanna, a male attorney, was an associate at Dechert from September, 2006 until his termination in December, 2008. He is married and has two children. His wife suffers from chronic mental illness.

During Ayanna's first year of employment at Dechert he met his assigned objective for billable hours, received positive performance reviews and was awarded a bonus.

-1-

During his second year, Ayanna requested to work from the Munich office of Dechert for nine months while his wife completed a Fulbright scholarship in Germany. Dechert did not transfer Ayanna to the Munich office, but, instead, agreed that he could work from Munich while remaining assigned to the Boston office. Ayanna contends that because attorneys in Munich worked fewer hours, he was told by his supervisors in Boston that he did not need to meet the billable hours requirement for United States based attorneys while working from Germany. Despite that reassurance, once in Germany, Ayanna expressed concern to the Boston office about his reduced hours. He requested additional work but was not assigned any. Although Ayanna's billable hours were lower than stateside attorneys, he billed more hours than the other associate in the Munich office.

During their time in Munich, Ayanna's wife became pregnant with their second child and experienced a deterioration of her mental health. After she attempted to commit suicide, Ayanna took emergency FMLA leave to care for his wife. Following the birth of their second child, he took four weeks of paid paternity leave. His wife's condition improved and he was able to return to the Boston office of Dechert in August 2008, despite being scheduled to remain on FMLA leave until September. As a result of his early return, Ayanna remained eligible for an additional four weeks of FMLA leave that year. He continued to care for his

-2-

wife and children after returning to work.

When he returned to the Boston office Ayanna was assigned to be the "right hand man" to Partner Christopher Christian ("Christian"). Ayanna contends that Christian was immediately hostile to him due to his recent leave and monitored his work and presence in the office more closely than other associates. After Ayanna's wife was briefly hospitalized at the end of September 2008, the assignment of work from Christian to Ayanna dropped off and Christian began assigning work to other associates.

In his annual performance evaluation Ayanna was given an overall "fair" rating. Dechert claims that rating took into account both billable hours and supervisor evaluations but placed a far greater emphasis on the former.  Of the ten performance evaluators, one rated Ayanna as "fair", the others gave him ratings of "good" or "very good."  Between January 2008 and October 2008 Ayanna billed 850 hours and 41 pro bono hours.  He also completed 554 non-billable hours on internal firm projects while in Germany.  Ayanna's "annualized" billable hours were adjusted to 1,460 to account for his FMLA and paternity leave. His total billable hours fell far short of the 1,950 target for associates in the Boston office and Ayanna ranked 62nd out of 65 associates in his practice group.

On December 17, 2008 Ayanna was terminated.  All of the associates who received a rating of fair (except one who had only

recently joined the firm) were also terminated.

Following his termination, a client contested one of Ayanna's billed meal expenses. Dechert then investigated the meal and transport expenses Ayanna had billed to clients in the months prior to his termination. It discovered numerous instances where Ayanna had billed food or transportation services to clients despite billing very little or no time to that client that day.

## II.  Procedural History

In September 2009, Ayanna filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC"). Shortly thereafter, however, he gave notice to both agencies of the withdrawal of his claims in order to file a private right of action in civil court.  The EEOC informed Ayanna in June, 2010 that he had 90 days to file any lawsuit alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") or of the Americans with Disabilities Act ("the ADA") and that failure to file would cause a waiver of his right to those claims.

Ayanna failed to meet that deadline but nevertheless filed a complaint with this Court on December 14, 2010 alleging violations of the FMLA, Title VII and the ADA as well as sex discrimination under Chapter 151B.  He voluntarily dismissed the claims under Title VII and the ADA in February, 2011.

On February 28, 2011, Dechert filed an answer denying the allegations against it and asserting 16 affirmative defenses. Ayanna subsequently filed an amended complaint to add a new count for handicap discrimination under Chapter 151B based on his association with his mentally ill wife.  This Court dismissed the count alleging handicap discrimination in January, 2012.

**III. <u>Analysis</u>**

**A.   Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." <u>Mesnick</u> v. <u>Gen. Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (quoting <u>Garside</u> v. <u>Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u>  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. <u>O'Connor</u> v. <u>Steeves</u>, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B.   Application**

**1.   Retaliation for Exercising Rights Afforded Under the Family Medical Leave Act (Count I**)

Ayanna claims that Dechert retaliated against him for taking FMLA leave by withholding work assignments, thus decreasing his billable hours for the year and, ultimately, terminating him on the ground that his billable hours were too low.

Although the text of 29 U.S.C. § 2615(a) makes no reference to retaliation, the First Circuit has recognized such a cause of action in the statute and the interpretative regulation. <u>Hodgens</u> v. <u>Gen. Dynamics Corp.</u>, 144 F.3d 151, 160-61 & n. 4 (1st Cir. 1998)(citing 29 U.S.C. § 2615(a)(1), (2) and 29 C.F.R. § 825.220(c)).  When there is no direct evidence of retaliation for taking FMLA leave, the Court applies the <u>McDonnell Douglas</u> three

step burden-shifting framework. <u>Hodgens</u>, 144 F.3d at 160.  The
plaintiff employee carries the initial burden to come forward
with sufficient evidence to establish a prima facie case of
discrimination or retaliation. <u>McDonnell Douglas Corp.</u> v. <u>Green</u>,
411 U.S. 792, 802 (1973).  The burden then shifts to the employer
to "articulate some legitimate, nondiscriminatory reason" for the
employee's termination that is sufficient to raise a genuine
issue of fact as to whether the employer discriminated against
the employee. <u>Id.</u>  The employer must clearly articulate a non-
discriminatory reason for the termination that is legally
sufficient to justify a judgment for the employer. <u>Tex. Dep't of
Comm. Aff.</u> v. <u>Burdine</u>, 450 U.S. 248, 255 (1981).  If that showing
is made, the presumption of discrimination drops away and the
burden shifts back to the employee to prove that the employer's
explanation for the termination is actually a pretext for
retaliation for taking FMLA leave. <u>McDonnell Douglas</u>, 411 U.S. at
802.

     To make out a prima facie case of retaliation under the
FMLA, an employee must prove that 1) he engaged in the protected
conduct of taking FMLA leave, 2) he was fired, and 3) the
protected conduct and the termination were causally connected.
<u>Orta-Castro</u> v. <u>Merck, Sharp & Dohme Quimica P.R., Inc.</u>, 447 F.3d
105, 114 (1st Cir. 2006).  Only the third prong is in dispute in
this case.

-7-

Although courts are hesitant to find a causal connection between an employee's FMLA leave and firing if the intervening time was several months, "[t]emporal proximity can create an inference of causation in the proper case." Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 85 (1st Cir. 2006). As discussed below, when viewed in the light most favorable to Ayanna, there is sufficient evidence to support a finding that his FMLA leave and his termination were related, whether or not there was "temporal proximity."

Dechert avers that Ayanna was fired for the non-discriminatory reason that his billable hours during 2008 were too low. While the Court finds plaintiff's claims somewhat dubious at this stage, viewing the facts in the light most favorable to Ayanna and drawing all reasonable inferences in his favor, it acknowledges that Ayanna has presented sufficient evidence to raise a genuine issue of material fact as to whether that proffered reason was actually a pretext for retaliation.

First, at the time he was fired, Ayanna was told by Dechert Partner Joseph Fleming that he was terminated due to his "fair" rating and his "personal issues." A reasonable jury could find that the comment was directed at Ayanna's recent need to take FMLA leave.

Furthermore, there remains a factual dispute as to whether Ayanna's billable hours were low because the firm purposefully

withheld work from him in retaliation for taking FMLA leave.
Viewing the facts in the light most favorable to Ayanna,
Christian monitored Ayanna very closely following his return from
FMLA leave.  When Christian became aware that the condition of
Ayanna's wife had worsened to the point that she needed further
hospitalization, Christian shared his concern with other Dechert
employees regarding Ayanna's ability to handle his workload.  At
the same time, Ayanna's work for Christian was curtailed.
Christian informed Ayanna he no longer considered him "reliable"
and was spreading work that previously would have gone to Ayanna
to other associates thus decreasing his billable hours.

As proof that Ayanna was not denied work assignments in
retaliation for taking FMLA leave, Dechert asserts that he billed
more hours in September and October after returning from leave
than he did prior to taking FMLA leave.  However, Ayanna was
working from Germany immediately prior to taking FMLA leave.
Because it remains disputed whether the firm approved of his
reduced billing while in Germany, his number of billable hours is
not dispositive of his claim that he was denied work assignments.

When considering his annual billable hours, Dechert did not
take into account Ayanna's time in Germany but, nevertheless,
directly compared those billable hours to other Boston based
associates when deciding whether to terminate him.  The Court
acknowledges that not adjusting the hours of associates

temporarily working in foreign offices may have been standard practice at Dechert.  Without evidence in the record of such a policy, however, and without knowing how many other retained associates failed to reach Dechert's billable hours target that year, a direct comparison of Ayanna's pre- and post-FMLA leave hours is not enough to disprove the inference that he was denied work in retaliation for taking leave.  A reasonable jury could find that had Ayanna not taken FMLA leave, Dechert would have treated his reduced billable hours simply as an expected by-product of his temporary assignment to Germany.

Finally, unlike most of the attorneys who were terminated contemporaneously, Ayanna met his billable hours requirement the previous year.  While several other associates who were terminated were warned during 2008 that their billable hours were disappointingly low, Ayanna apparently was not given any such warning prior to his termination.  That calls into question Dechert's claim that Ayanna was terminated solely because of his low billable hours.

Drawing all inferences in Ayanna's favor, there remains a genuine issue of material fact as to whether Dechert's termination of Ayanna on the ground of his low billable hours was actually a pretext for retaliation. As a result, although Dechert may ultimately prevail on this claim, based on the evidence

currently in the record, Dechert is not entitled to summary judgment.

## 2.   Violation of M.G.L c. 151B § 4(1) (Count II)

Ayanna alleges disparate treatment sex discrimination in violation of Chapter 151B on the grounds that he was fired because he was a male caregiver.  Ayanna contends that his decision to take FLMA and paternity leave and to prioritize family obligations did not comport with Dechert's firm culture, which he asserts is dominated by a traditional male "macho" stereotype that promotes relegating family responsibilities to women.

Disparate treatment sex discrimination claims under Chapter 151B are also subject to the three step <u>McConnell Douglas</u> burden-shifting test. <u>Boston Pub. Health Comm'n</u> v. <u>Mass. Comm'n Against Discrim.</u>, 67 Mass. App. Ct. 404, 407-08 (2006).  In the first stage, a plaintiff must prove the four elements of a prima facie case of sex discrimination: (1) membership in a protected group, (2) performance of her job at a satisfactory level, (3) termination from employment, and (4) that the position remained open or the employer hired of a member of an unprotected group with the same or lesser qualifications than the plaintiff. <u>Id.</u> While Dechert asserts that Ayanna was fired for failing to meet performance expectations, as discussed above, there remains a

dispute as to whether his low billable hours were actually caused by Dechert's alleged discriminatory treatment.

Even presuming that Ayanna can make out a prima facie case of disparate treatment sex discrimination, however, he has offered no evidence that his termination for low billable hours was actually a pretext for terminating him because he was a male who was also a caregiver. His broad claims about the "macho" culture at Dechert, without any facts specifically showing instances of discrimination against him, are inadequate to support a finding that he was fired due to his gender.

In fact, the record reflects that female attorneys who took on caregiving roles also experienced negative outcomes at Dechert. For example, a female attorney who was fired at the same time as Ayanna indicated that she was unable to obtain adequate work assignments when she returned from maternity leave. Further, the evidence does not support a finding that Christian was antagonistic to Ayanna because he is a male caregiver. At most the record suggests that Christian may have disfavored him because Ayanna prioritized his family over his employment responsibilities. While those facts suggest Ayanna may have been terminated because of the time he allotted to his caregiving duties, Chapter 151B does not provide protection for employees based on their caregiver status alone. Because Ayanna has

proffered no evidence that his termination was based on his gender, Dechert is entitled to summary judgment on this count.

### 3.   After acquired evidence

Dechert asserts that Ayanna's claims are barred because Ayanna expensed food and transportation costs to clients in violation of firm policy. Dechert claims that because there is an independent ground on which he could have been terminated, Ayanna is ineligible for damages.

An employer who relies upon after-acquired evidence of an employee's wrongdoing must first establish that the wrongdoing was of

> such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge.

McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 362-63 (1995).  Although statements by current Dechert employees attest to the severity of the infractions, viewing the evidence in the light most favorable to Ayanna, Dechert has not proven that Ayanna would have been fired based on his food and transport costs alone.  Apparently, Dechert has never investigated, disciplined or terminated an employee for their misuse of the firm's food or transport services.  Furthermore, on the same day that Dechert first notified Ayanna that it had discovered the improper expenses, the firm also certified to the Massachusetts Department of Unemployment Assistance that Ayanna had not engaged

in any "misconduct or violation of company rules or policy."  As a result, Dechert's after-acquired evidence does not prove that Ayanna would have been fired on that ground alone and thus summary judgment on that ground is unwarranted.

Finally, even if Dechert's after-acquired evidence did prove Ayanna would have been fired, back pay would still be appropriate from the time of the wrongful termination to the time of the discovery of the misconduct which, in this case, was several months. McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 362 (1995).  The Court could also award attorney's fees.  As a result, after-acquired evidence does not provide a complete bar to recovery.

## ORDER

In accordance with the foregoing, the defendant's motion for summary judgement (Docket No. 67) is, with respect to Count I, **DENIED,** and is, with respect to Count II, **ALLOWED.** Accordingly, Count II is **DISMISSED.**


**So ordered.**

    /s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated October 17, 2012

-14-